# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

MASON BURBANK,                      )
                                    )
      Plaintiff,                    )
                                    )
v.                                  )                    CV418-294
                                    )
WILLIAM KIRKCONNELL, *et al.*,      )
                                    )
      Defendants.                   )

## ORDER AND REPORT AND RECOMMENDATION

Proceeding *pro se* and *in forma pauperis*, plaintiff Mason Burbank has filed this 42 U.S.C. § 1983 action alleging various constitutional violations arising from the execution of a warrant and his subsequent arrest by a Federal Bureau of Investigation (FBI) child exploitation task force.  *See* CV418-294, doc. 6; *see generally United States v. Burbank*, CR417-44 (charges dismissed and case closed on June 29, 2017).  The Court granted his request to proceed *in forma pauperis* (IFP), doc. 3, and he returned the necessary forms.  Docs. 4 & 5.  The Court now proceeds to screen the Complaint pursuant to 28 U.S.C. § 1915A, which requires the immediate dismissal of any *pro se* complaint that fails to state at least one

actionable claim against a governmental entity or official.[1]

## I.   BACKGROUND

Some background is necessary.   During an undercover investigation, agents downloaded various files containing child pornography from a device at a specific IP-address; search warrants served on the internet provider for that address then supported a search warrant for a Georgia residence.   *See* MJ417-006, docs. 4 & 5.   The warrant specified the items to be searched and seized, chiefly any "visual depictions of child pornography" and "any mechanism used for the distribution, receipt or storage of the same" (*i.e.*, "[a]ny computer, computer system and related peripherals including cellular telephones, "smart phones" and data processing devises . . ."), among other things. *Id.*, doc. 5, Att. B ("List of Items to Be Seized and Searched").   Having approved the warrant, the Court made a copy available to the agents. FBI Special Agent William Kirkconnell (the lead agent on the case), however, failed to pick it up prior to the day of the planned search.

---

[1]   Because the Court applies Fed. R. Civ. P. 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001), allegations in Burbank's Complaint are taken as true and construed in the light most favorable to him. *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011).   Conclusory allegations, however, fail. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal).

CR417-044, doc. 39 at 6.

Kirkconnell realized his mistake as task force members gathered at around 6:45 a.m. on February 2, 2017.  CR417-044, doc. 39 at 43-44, 56 (testifying that while he didn't know the specific law or rule, he knew he had a duty to serve a copy of the warrant at execution).  But Kirkconnell was reticent to disrupt the scheduled search, given the imposition on the assembled agents.  *Id.* at 43.  Kirkconnell conferred with his fellow agents about what to do, and concluded the scenario was analogous to an "oral warrant" search -- where a paper copy of the warrant obviously would not be available (*e.g.*, where the warrant was approved and issued over the phone).  *Id.*  So, at 8:05 a.m. Kirkconnell executed the search, despite not having either a paper or electronic copy of the warrant in his possession (the warrant was still sealed and thus inaccessible remotely from the Court's electronic docket).  *Id.* at 6-7.

Burbank repeatedly demanded that a copy of the warrant be given to him while agents searched the premises.  CR417-044, doc. 39 at 45.  At some point during the search, and despite the agents' failure to comply with his demand, Burbank voluntarily turned over his mobile phone.  *Id.* at 40.  Burbank was eventually given a copy in mid-April 2017 -- more

than 60 days after the search was executed. *Id.* at 16-17. Meanwhile, forensic examination of his cell phone revealed more than 2700 images of naked prepubescent children engaged in sexually explicit activity, 53 sexually graphic videos depicting children under the age of 12, and text messages and conversations evincing a sexual relationship between him and a child. CR417-044, doc. 31 at 2 (citing USAO 74); *see also id.*, doc. 1 (indictment for possession, receipt, and distribution of child pornography). Burbank's counsel moved to suppress the evidence, arguing that Kirkconnell's failure to serve a copy of the warrant violated Fed. R. Crim. P. 41, and, after a hearing, the Government dismissed the charges against him.[2] *See* CR417-044 at docs. 28, 36 & 40. The State of Georgia, however, initiated its own prosecution.

Burbank now seeks to enjoin the various federal agents involved in executing the warrant from testifying in his state prosecution, get $200,000 in damages against the federal agents for "their actions in furtherance of [an] illegal search," and perhaps (it is less clear in his

---

[2] Contrary to plaintiff's representation, the suppression motion was *not* resolved in his "favor." CV418-294, doc. 6 at 5. Rather, after the hearing and before supplemental briefing was due, the Government elected to dismiss the charges. CR417-044, doc. 36. The suppression issue was, therefore, moot.

Amended Complaint) seeks to prevent the evidence they found from being used in the State's case against him.   CV218-297, doc. 6 at 5 (contending that defendants have given "illegal evidence to the State"); *see State v. Burbank*, CV17-R-399 (Liberty Cnty. Super. Ct.).

## II.   ANALYSIS

Warrants "assure[ ] the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." *United States v. Chadwick*, 433 U.S. 1, 9 (1977), *abrogated on other grounds*, *California v. Acevedo*, 500 U.S. 565 (1991).   That assurance, however, does not imply any substantive right to monitor police conduct during a search. *See United States v. Grubbs*, 547 U.S. 90, 99 (2006); *United States v. Stefonek*, 179 F.3d 1030, 1034-35 (7th Cir. 1999).

Absent exigent circumstances, Fed. R. Crim. P. 41(f) requires that notice -- a copy of an executed search warrant -- be provided to the owner of the property seized.[3]   But it's not an exacting requirement, and it is

---

[3]   Rule 41(f)(1)(C) states:

The officer executing the warrant *must* give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken or leave a copy of the warrant and receipt at the place where the officer took the property.

certainly not constitutionally required.  For example, "neither the Fourth Amendment nor Rule 41 . . . requires the executing officer to serve the warrant on the owner before *commencing* the search." *Groh v. Ramirez*, 540 U.S. 551, 562 n. 5 (2004) (emphasis added); *see also United States v. Banks*, 540 U.S. 31, 35 (2003) ("[t]he Fourth Amendment says nothing specific about formalities in exercising a warrant's authorization."); *Katz v. United States*, 389 U.S. 347, 356 n. 16 (1967) ("the Federal Rules of Criminal Procedure [do not] impose an inflexible requirement of prior notice."); *United States v. Cazares-Olivas*, 515 F.3d 726, 730 (7th Cir. 2008) ("whatever the most prudent course may be, the fourth amendment does not require officers to have a warrant in hand when searching."); *United States v. Hepperle*, 810 F.2d 836, 839 (8th Cir. 1987) ("[w]hile it may be foolhardy to proceed in the absence of the physical presence of the warrant, it is not unconstitutional.").  In other words, a warrant must be provided at some point, but there is no requirement (constitutional or otherwise) that it be presented at the outset of a search.

This case, however, does not present the more common fact-pattern

---

Rule 41(f)(1)(C) (emphasis added).  Rule 41(f)(3) allows a delay in providing the warrant through exceptions not applicable here.  *See* 18 U.S.C. 3103a(b).

in which a copy of the warrant is provided within a short time after the commencement, or even conclusion, of a search.  As discussed above, Burbank was not presented a copy of the warrant for several months after the search.  Nevertheless, "[u]nless a clear constitutional violation occurs, noncompliance with Rule 41 requires suppression of evidence only where (1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule." *United States v. Gerber*, 994 F.2d 1556, 1560 (11th Cir. 1993) (emphasis added) (citing *United States v. Loyd*, 721 F.2d 331, 333 (11th Cir. 1983) & *United States v. Marx*, 635 F.2d 436, 441 (5th Cir. Jan. 27, 1981)).  Burbank does not contend the search would not have occurred or would have been different in scope had a copy of the warrant been present; thus, he suffered no prejudice.  CV418-294 at 6;[4] *see United States v. Brown*, 569 F. App'x 759, 763 (11th Cir. 2014).  He argues instead that because Kirkconnell knowingly violated Rule 41, the fruits of the search must be suppressed.

---

[4]  The impact of agents' testimony on a grand jury's deliberations (CV418-294, doc. 1 at 5) is nowhere in the sphere of "prejudice" warranting suppression for Rule 41 noncompliance.  *Gerber*, 994 F.3d at 1560.

But violating Rule 41 does not *per se* violate the Constitution. *Simon*, 206 F.3d at 403 (violations of Rule 41 do not automatically render a search unreasonable under the Fourth Amendment); *see United States v. Calandra*, 414 U.S. 338, 348 n. 6 (1974) (the Federal Rules of Criminal Procedure do "not constitute a statutory expansion of the exclusionary rule."); *United States v. Johnson*, 660 F.2d 749, 753 (9th Cir. 1981). After all, the Fourth Amendment does not mention notice. Indeed, "the Supreme Court has stated that the Constitution does not categorically proscribe covert entries, which necessarily involve a delay in notice." *United States v. Simons*, 206 F.3d 392, 403 (4th Cir. 2000) (citing *Dalia v. United States*, 441 U.S. 238, 247-48 (1979)). It follows that a "notice failure" on an indisputably valid search warrant simply does not rise to a constitutional magnitude. *Simons*, 206 F.3d at 402-03; *see* WAYNE R. LAFAVE, *Search & Seizure* § 4.12 (5th ed. 2016) (generally, requirements imposed by statute or court rule concerning the execution of search warrants are considered ministerial and "are not deemed to flow so directly from the Fourth Amendment's proscription upon unreasonable searches that failure to abide by them compels exclusion."). At most, such a "ministerial" misstep constitutes a "mere technical error," *see, e.g.,*

*United States v. Williamson*, 439 F.3d 1125, 1132-34 (9th Cir. 2006), absent a showing of subjective bad faith.

Burbank's argument is that the search was invalid because agents executed an otherwise valid warrant that they didn't have in their hands, *not* that they were engaged in some sort of malfeasance.  Even taking as true Burbank's present allegations that the agents, after conferring about "the legal ramifications of searching without having a copy of the warrant," "decided to search anyways" – in knowing disregard of the requirement (doc. 1 at 5; *see also* CR417-044, doc. 39 at 43 (Kirkconnell's testimony that while he knew he had a duty to present a copy of the warrant at execution, he also believed (albeit mistakenly) that he could proceed without a copy of the valid, magistrate-approved warrant)[5] – the search was merely technically deficient.  Burbank does not allege that the executing agents believed the warrant invalid or lacking in probable cause, or that they exceeded the scope of the warrant.  *C.f. United States*

---

[5] A substantive analysis of the merits of Burbank's suppression argument would likely require the Court to consider the subtle distinction between a *knowing* violation of Rule 41 and an *intentional* violation (*i.e.*, the distinction between an agent's execution of a search with the knowledge that he was unable to comply with Rule 41, but with the false belief that some exception applied, and an agent's execution of the search with the intent to violate the Rule).  Fortunately, the disposition of Burbank's current suit does not require litigation of the suppression issue.

*v. Freitas*, 856 F.2d 1425, 1432 (9th Cir. 1988) (because "Rule 41's rule of intentional and deliberate misconduct requires subjective bad faith on the part of the government agents," where "[t]he overwhelming evidence in this case is that the agents acted in subjective good faith in preparing and executing the warrant" and the "agents still would have conducted the search" in the same manner had the procedural violation not occurred, suppression is inappropriate).  Burbank does not even hint that Kirkconnell's failure was anything more than a ministerial misstep.

"Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."  *See* Fed. R. Crim. P. 52(a).  And, as set forth above, Rule 41 violations, being "essentially ministerial in nature," simply do not rise to constitutional magnitude.  *Marx*, 635 F.2d at 441; *see also United States v. Hector*, 474 F.3d 1150, 1153-55 (9th Cir. 2007); *c.f. United States v. Cafero*, 473 F.2d 489, 499 (3d Cir. 1973) ("[w]e find it difficult to accept the proposition that a search may be deemed reasonable, and therefore constitutional during the various stages of application for authorization, execution, supervision of the interception, and termination, only to be invalidated *ab initio* because of the operation of some condition subsequent, to-wit, a failure to give notice of the items

seized.").

Finally, the passage of time between the search and the production of the warrant 60 days later (in mid-April 2017, during discovery) provides no constitutional hook. *See, e.g., Simons*, 206 F.3d at 403 (as long as the "search satisfied the requirements of the Fourth Amendment, *i.e.*, it was conducted pursuant to a warrant based on probable cause issued by a neutral and detached magistrate," such a "delay in notice" -- there, a 45-day delay in providing a copy of the warrant -- does not render the search unconstitutional).  In sum, the failure of federal agents to provide Burbank with a copy of the warrant at the time of its execution -- though indisputably a violation of Rule 41 -- did *not* render the search unconstitutional.[6]

The Government, however, dismissed the case before the suppression issue was decided.  CR417-044, doc. 36.  State officers then decided to prosecute Burbank, regardless of his suppression arguments.  As explained above, the execution (without service) of the warrant upon Burbank in February 2017 did not violate his federal constitutional

---

[6]  The Court is not required to accept Burbank's legal conclusion that a violation of Rule 41 would have compelled suppression in the federal proceeding, and he has not alleged a violation of the Fourth Amendment otherwise occurred.

rights. The State is thus *not* prohibited from utilizing the fruits of that search in its own prosecution.[7]  *See Mapp v. Ohio*, 367 U.S. 643, 646-47 (1961). Burbank's Complaint, insofar as it seeks damages resulting from the State's offering the evidence in a state-court proceeding[8] (*see* CV418-294, doc. 1 at 5), is dead in the water.[9]

A more interesting argument, however, arises from Burbank's request that the defendant federal agents be enjoined from testifying in his state prosecution and required to recover the evidence they provided to the State. CV418-294, doc. 1 at 9-10. After all, Kirkconnell and his agents knowingly and deliberately violated Rule 41 in executing a warrant when they did not have a copy available to serve upon him.

---

[7]  Even were there a federal constitutional violation, of course, seeking a suppression order for the state prosecution through *this* court is inappropriate. Burbank is free to challenge the admissibility of the evidence in the state court.

[8]  Burbank does not allege that the warrant was invalid or unsupported by probable cause. CV418-294, docs. 1 & 6. But even assuming the warrant should not have been issued, defendants would more than likely be shielded from damages by qualified immunity. After all, the warrant they executed was signed by a magistrate of this court and "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, . . . in 'objective good faith'" in executing the warrant. *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012); *see also id.* at n. 1.

[9]  Though -- it bears repeating -- a violation of Rule 41 does not comprise a *per se* constitutional violation, *even if it did* the Court could not decide the issue for the state court. It is clear that Burbank has a plain and adequate remedy at law in the state court to redress any alleged illegality in the search and his subsequent arrest. *See Wilson v. Schnettler*, 365 U.S. 381, 384 (1961).

Burbank cites *Rea v. United States*, 350 U.S. 214, 217 (1956), for the position that this Court has "supervisory power over federal law enforcement agencies" to enjoin these agents from testifying in his state case.  Only, however, if their search was *unlawful.  Id.* at 217 (enjoining a federal agent from "us[ing] his illegal search and seizure as the basis of testimony in the state court.").  As discussed above, it was not.  Mere technical violations, in the absence of any order finding a constitutional defect in the procurement and execution of the underlying warrant, are not enough for this Court to exercise its authority to prevent defendants from testifying.  Indeed, *no court* has ever suppressed the fruits of the search because of Kirkconnell's failure to comply with Rule 41.

The cases Burbank cites in his Complaint belie his claim to injunctive relief against these defendants.  In *Rea*, the district court had granted Rea's motion to suppress because the warrant was improperly *issued* under Rule 41(c) "in that it was insufficient on its face, no probable cause existed, and the affidavit was based on unsworn statements."  350 U.S. at 215, cited in CV418-294, doc. 1 at 10.  The Supreme Court later emphasized that *Rea* was predicated upon the federal court's interest "to prevent the thwarting of the *federal suppression order* . . . ."  *Wilson*, 365

U.S. at 387; *see United States v. Navarro*, 429 F.2d 928, 930 (5th Cir. 1970). Burbank has alleged no fact suggesting a commensurate constitutional violation here, and, more importantly, *no order* suppressing evidence on *any* grounds exists.[10]

Similarly, in *Navarro*, 429 F.2d 928, the Fifth Circuit had earlier reversed Navarro's conviction on appeal because the search warrant executed upon him was fundamentally invalid (it was not issued by a court of record, in violation of Rule 41(a)). *Id.* at 929, cited in CV418-294, doc. 1 at 10. The Fifth Circuit therefore enjoined agents from testifying in Navarro's state prosecution. *Navarro*, 429 F.2d at 929. The Fifth Circuit emphasized that "[t]he justification for an injunction in such situations is to protect the integrity of *the suppression order*." *Navarro*, 429 F.2d at 930 (emphasis added). Simply put, law enforcement officers

---

[10] That such an order might very well have *denied* suppression only affirms this result. *C.f. Wilson*, 365 U.S. at 394-95, 397 (Douglas, J., dissenting) (explaining that *Rea* "forged the doctrine, now firmly entrenched, that the federal courts will not admit illegally seized property as evidence. It is this doctrine which was the core of the substantive command whose procedural outlines are reflected in Rule 41(e)." Justice Douglas elaborated that when he "wrote for the Court in [*Rea*] that '(t)he obligation of the federal agent is to obey the Rules,'" he "thought that [the Court] meant obedience to the substantive law for which those rules offer a procedural matrix." More to the point, Justice Douglas affirmed that only where federal agents' "flouting" of the Rules requires suppression in the federal court should their testimony be enjoined or their evidence recovered from introduction in the state prosecution).

14

are not permitted to circumvent the federal courts' determinations of constitutional violations and subsequent orders by turning the case over to state prosecutors. *Wilson*, 365 U.S. at 387. But there is no suppression order to protect here. *See* CR417-044. There is therefore no justification to enjoin these agents from testifying in the state proceeding (assuming that court admits their testimony). Burbank, in other words, asks for relief that this Court cannot provide.

## III. CONCLUSION

An accused "should not be permitted to use the machinery of one sovereignty to obstruct his trial in the courts of the other, unless the necessary operation of such machinery prevents his having a fair trial." *Ponzi v. Fessenden*, 258 U.S. 254, 260 (1922), quoted in *Wilson*, 365 U.S. at 385. Burbank, failing to state a claim upon which relief may be granted, should not be permitted to gum up his state prosecution by demanding this Court's further attention. His Complaint should be **DISMISSED** without prejudice.[11]

---

[11] To the extent Burbank believes he can resuscitate his claim, he remains free to submit an Amended Complaint if he believes that it would cure the legal and factual defects discussed above. *See Willis v. Darden*, 2012 WL 170163 at * 2 n. 3 (S.D. Ga. Jan. 19, 2012).

Meanwhile, it is time for Burbank to pay his filing fee.  Since his PLRA paperwork reflects an average monthly balance of $8.66, doc. 5, Burbank owes an initial partial filing fee of $1.75.  *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist").  His custodian (or designee) shall therefore set aside and remit 20 percent of all future deposits to his account, then forward those funds to the Clerk each time the set aside amount reaches $10.00, until the balance of the Court's $350.00 filing fee has been paid in full.

The Clerk is **DIRECTED** to send this Order and Report and Recommendation (R&R) to Burbank's account custodian immediately, as this payment directive is nondispositive within the meaning of Fed. R. Civ. P. 72(a), so no Rule 72(b) adoption is required.  In the event he is transferred to another institution, his present custodian shall forward a copy of this Order and R&R and all financial information concerning payment of the filing fee and costs in this case to Burbank's new custodian. The balance due from Burbank shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this Order.

16

This R&R is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."   Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge.   The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).   The parties are advised that failure to timely file objections will result in the waiver of rights on appeal.  11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648

F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO ORDERED AND REPORTED AND RECOMMENDED,** this 4th day of January, 2019.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

18