# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

MASON BURBANK,              )
                                 )
       Plaintiff,         )
                                 )
v.                              )            CV418-294
                                 )
WILLIAM KIRKCONNELL, *et al.*,   )
                                 )
       Defendants.     )

## REPORT AND RECOMMENDATION

Proceeding *pro se* and *in forma pauperis*, plaintiff Mason Burbank has filed this 42 U.S.C. § 1983 action alleging agents used excessive force during the execution of a warrant and his subsequent arrest by a Federal Bureau of Investigation (FBI) child pornography task force. *See* CV418-294, doc. 13; *see generally United States v. Burbank*, CR417-44 (charges dismissed and case closed on June 29, 2017).

Burbank alleges that various agents used excessive force by "unholstering and pointing their pistols at [him] without provocation," "through abusive language and physical intimidation," and by "grabb[ing] [his] shoulders" and "shoving [him] through the line of fire of one unknown [ ] agent and manhandling [him] into a chair in [his] dining room." Doc. 13 at 1-3. Agents variously shoved open Burbank's front

door, entered the house, shouted at him (*i.e.*, "f***ing hands up!," "shut the f*** up," "face away from me a******"), and generally menaced him by having their firearms unholstered and, occasionally, pointed at him. *Id*. at 2-3.  Two of the agents then "put their hands on the grip of their pistols" during questioning, all of which defendant agents William Kirkconnell and John Schmitt watched without intervening. *Id*. at 2.  Burbank clarifies that "no weapons were drawn until agents were inside [his] home," "no handcuffs were used and no tasers were pulled." *Id*. at 3.  Nor did the agents discharge their weapons. *See id*. at 1-3.  But, because they were armed and had their weapons drawn during their frisk of his person and initial questioning, Burbank contends he was "exposed to deadly force for over 2 minutes." *Id*. at 3.

As a result of the fear of imminent harm he suffered, Burbank had a migraine and "chest pains" throughout the encounter, "suffered a seizure within 20 minutes of the agents leaving," and had "anxiety attacks" and insomnia in the months following.  Doc. 13 at 3.  He "suffered intentional infliction of emotional distress, and humiliation" and continues to have sporadic nightmares about the agents' presence at his home to execute a warrant in search of child pornography. *Id*.  Burbank seeks $815,000 in

compensatory and punitive damages, as well as nominal damages. *Id*. at 4.

Liberally construed, Burbank alleges that the execution of the warrant, accompanied as it was by foul language and drawn weapons, violated the Fourth Amendment. *See Albright v. Oliver*, 510 U.S. 266, 274 (1994) ("deprivations of liberty that go hand in hand with criminal prosecutions" are properly analyzed under the Fourth Amendment); *Graham v. Connor*, 490 U.S. 386, 395 (1989) (Fourth Amendment provides the guide for analyzing claims that law enforcement officers used excessive force in the course of an arrest or other seizure). To allege excessive force by law enforcement, a plaintiff must assert that the officer's conduct was objectively "unreasonable." *Id*. at 395-97. Such a test looks not to the motivation of the particular officer, but instead examines whether a reasonable officer would have taken the same action.[1] *Id*. at 397.

---

[1]   "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quotes and cites omitted).

Because "[t]he test of reasonableness under the Fourth Amendment is not capable of a precise definition or mechanical application," . . . its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he

Here, Burbank alleges that he was intimidated by agents' drawn weapons and coarse language, and that a single agent shoved him into a chair.  Doc. 13 at 1-3.  Since no force was necessary to effectuate the execution of the warrant, he appears to argue, *any* use of force — whether real or threatened — was *per se* unreasonable and excessive.  Even taken as true, as his factual allegations must be at this stage, they are far from sufficient to muster an excessive force claim.

Yelling, "harsh language," hands on holstered weapons, guns drawn while examining his home for threats, and a single shove — such allegations "amount to no more than the 'degree of physical coercion,' *Graham*, 490 U.S. at 396, typically attendant to an arrest." *Pena-Borrero v. Estremeda*, 365 F.3d 7, 12 (1st Cir. 2004) (officer's threat to break down a door and use of foul language did not violate the Constitution); *see also*

---

is actively resisting arrest or attempting to evade arrest by flight.

*Id.* (cites omitted).  The Court examines "the fact pattern from the perspective of a reasonable officer on the scene with knowledge of the attendant circumstances and facts, and balanc[ing] the risk of bodily harm to the suspect against the gravity of the threat the officer sought to eliminate." *McCullough v. Antolini*, 559 F.3d 1201, 1206 (11th Cir. 2009) (*citing Scott v. Harris*, 550 U.S. 372, 383 (2007)).  "Although some amount of force is generally needed to subdue a suspect, the amount used must be reasonably proportionate to the need for force." *Smith v. LePage*, 834 F.3d 1285, 1294 (11th Cir. 2016); *see also Scott*, 550 U.S. at 383 (observing that in determining whether the Fourth Amendment was violated, "we must still slosh our way through the factbound morass of 'reasonableness.'").

*Wheeler v. Scarafiotti*, 85 F. App'x 696 (10th Cir. 2004) (officer "screaming at the defendants to raise their hand, having his hand near his holstered weapon, and threatening possible incarceration [ ] was objectively reasonable"). Given the unknown circumstances facing the agents as they entered Burbank's home, their caution in drawing weapons certainly doesn't seem unreasonable or excessive. *See Graham*, 490 U.S. at 396] ("a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight"). Nor does a single shove to seat Burbank in a chair for questioning rise to constitutional magnitude. *See id.* ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.") (quotes and cite omitted); *cf. Alexis v. McDonald's Restaurants of Mass.*, 67 F.3d 341, 352-53 (1st Cir.1995) (finding actionable excessive force claim where officers "suddenly and violently grabbed and pulled" plaintiff from a restaurant booth and across the table; handcuffed her hands tightly behind her back; dragged her from the booth, bruising her legs; hoisted her by her elbows and carried her to the police car, and then pushed her in).

Burbank emphasizes the possibility of "deadly force" he was

5

"exposed to" for two minutes, while agents had their weapons drawn in his home.  Doc. 13 at 1-3.  But there is a meaningful difference between the use or the attempted use of a weapon and mere display by an officer in the line of duty.  *Hinojosa v. City of Terrell*, 834 F.2d 1223, 1231 (5th Cir. 1988), *cited with approval in Courson v. McMillian*, 939 F.2d 1479, 1494 (11th Cir. 1991) (mere display of weapons during investigative stop does not rise to constitutional violation).   Even an "unnecessary" and "braggadocious" display of weapons, which "only conditionally threatens actual force," is neither excessive force nor an unlawful assault under state law for an officer executing his responsibilities.  *Hinojosa*, 834 F.2d at 1231-32.  And plaintiff's fear of possible harm, and nightmares suffered since, don't convert that *display* to an assault or comprise the kind of extreme or outrageous conduct that "causes severe emotional distress." *Jackson v. Dist. of Col.*, 412 A.2d 948, 955-56 (D.C. App. 1980).

Nor does loud, foul language — on its own, unaccompanied by *threats* — comprise force of any kind.  Statements like those cited by Burbank, "like so many others used by law enforcement to attempt to defuse a situation before the actual use of force is imminent, [are] not of [themselves] indicative of bad faith or malice on the part of the officers."

*Bozeman v. Orum*, 199 F. Supp. 2d 1216, 1230 (M.D. Ala. 2002), *on reconsideration in part sub nom. Bozeman ex rel. Estate of Haggard v. Orum*, 302 F. Supp. 2d 1310 (M.D. Ala. 2004), *and aff'd*, 422 F.3d 1265 (11th Cir. 2005); *c.f. Johnson v. Ft. Pierce Police Dep't*, 849 F. Supp. 1543, 1546 (S.D. Fla. 1994) (arresting officers yelling at plaintiff and pushing him to the ground when he did not comply with their commands quickly enough, resulting in sore muscles and strain, was a lawful, reasonable use of force).  Rough language alone simply does not create a constitutional violation. *Estate of Redd v. Love*, 62 F. Supp. 3d 1268, 1279 (10th Cir. 2014) ("harsh language, threats, and screams directed at individuals do not violate a clearly established constitutional right.").  While the Court acknowledges that "expletives communicate very little of substance beyond the officer's own personal animosity, hostility or belligerence. . . the use of such single expletive at someone who was not heeding an officer's order does not render the officer's otherwise lawful conduct unreasonable." *Reeves v. Churchich*, 484 F.3d 1244, 1261 (10th Cir. 2007).  More generally, "allegations of rudeness or incivility do not even constitute an actionable tort under state law, much less a violation of a constitutional right." *Green v. St. Lawrence*, 2013 WL 4875091 at *1

7

(S.D. Ga. Sept. 11, 2013) (Chatham County Sheriff's Department staffs' "rudeness" and "aggressive tone of voice" during plaintiff's visit to register as a sex offender "failed to state a colorable claim for relief under § 1983."); *see also Zherka v. Amicone*, 634 F.3d 642, 645-46 (2d Cir. 2011) ("Hurt feelings or a bruised ego are not themselves the stuff of a constitutional tort.").

Burbank alleges, at most, that officers entered his home and used a modicum of force to ensure he was not armed or otherwise a danger and seat him in a location they determined necessary for questioning.  Nothing in his Third Amended Complaint even hints at *excessive* force in violation of the Fourth Amendment.  And certainly nothing about a display of weapons or rough language rises to "the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress." *Garcia v. Shaw Industries*, Inc., 321 Ga. App. 48, 52 (2013); *see also Bowers v. Estep*, 204 Ga. App. 615, 618 (1992) (liability for the tort of intentional infliction of emotional distress attaches "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community.") (quotes and cite

omitted).  Put differently, and even crediting all his factual allegations, Burbank's claims of excessive force and intentional infliction of emotional distress fail and should be **DISMISSED**.[2]

Finally, Burbank also complains that he has been "humiliated" and suffered as a result of the agents' "intentional infliction of emotional distress."  Doc. 13 at 3.  To the extent that he waves, ever so slightly, at a defamation claim under § 1983, it fails as a matter of law.  *Paul v. Davis*, 424 U.S. 693, 711-12 (1976); *Walker v. Atlanta Police Dep't Public Affairs Unit*, 322 F. App'x 809, 810 (11th Cir. 2009); *Lowe v. Dollison*, 2012 WL 1555446 at * 3 (E.D. Tex. Mar. 2, 2012) ("defamation, libel, and slander are matters for state law and not the proper subject of a Section 1983 lawsuit."), *cited in Young v. Heap*, 2016 WL 4987331 at *1 (S.D. Ga. Aug. 8, 2016).  Although defamation falls outside § 1983's ambit, district courts have "supplemental jurisdiction over all claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  Nevertheless, when a court dismisses all "claims over which it has original jurisdiction,"

---

[2]  Because there was no use of excessive force, his claims against Agents Kirkconnell and Schmitt, who he argues "failed to intervene" to stop it, should be **DISMISSED**.

9

like Burbank's other § 1983 claims, it "may decline to exercise supplemental jurisdiction." *Id.* at (c). To the extent that the Court could hear any defamation claim under its supplemental jurisdiction, it should decline to do so. This claim too should be **DISMISSED**.

In sum, plaintiff's Third Amended Complaint should be **DISMISSED**.[3] This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and

---

[3] To the extent plaintiff believes he can resuscitate this case, and given that he has only once amended his Complaint to levy excessive force allegations, he may submit a Fourth Amended Complaint if he believes that it would cure the legal and factual defects discussed above. *See Willis v. Darden*, 2012 WL 170163 at * 2 n. 3 (S.D. Ga. Jan. 19, 2012).

recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to timely file objections will result in the waiver of rights on appeal.  11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED,** this __15th__ day of May, 2019.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

11